# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ROBBY TAYLOR,

       Plaintiff,

v.

SEDGWICK COUNTY BOARD OF
COMMISSIONERS, et al.,

       Defendants.

Case No. 18-2674-DDC-JPO

## MEMORANDUM AND ORDER

Plaintiff brings this lawsuit against three sets of defendants: (1) Chief District Judge James Fleetwood (in his official and individual capacities), District Judge Jeff Dewey (in his official capacity), District Judge Seth Rundle (in his official and individual capacities), Court Trustee Carl Wheeler, (in his official capacity), and District Court Clerk Bernie Lumbreras (in her official capacity) ("the Sedgwick County, Kansas defendants"); (2) the Board of County Commissioners of Sedgwick County ("the Sedgwick County BOCC") and Sedgwick County Sheriff Jeff Easter (in his official capacity); and (3) plaintiff's ex-wife, Melinda Slater.[1]

The Sedgwick County, Kansas defendants filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Doc. 14. Defendants Sedgwick County BOCC and Sheriff Easter filed a Motion to Dismiss under Rule 12(b)(6), or alternatively a Motion for More Definite Statement under Rule 12(e). Doc. 19. Defendant Slater also filed a Motion to Dismiss under Rule

---

[1] On July 8, 2019, plaintiff filed a "Notice of Pending Motion for Leave to File Amended Complaint." Doc. 38. Plaintiff's "notice" advises that he expects to file a motion for leave to amend by July 31, 2019. *Id.* at 1. Plaintiff never has filed a motion for leave to amend. Also, this kind of "notice" is not something recognized by the Federal Rules of Civil Procedure. The court thus disregards plaintiff's filing.

12(b)(6), or alternatively a Motion for More Definite Statement under Rule 12(e). Plaintiff has filed a Response. Doc. 33. All defendants have filed Replies. Docs. 35, 36, 37. For reasons explained below, the court grants defendants' motions.

## I.       Facts

The following facts come from plaintiff's Complaint and the court views them in the light most favorable to him. *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) ("We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]." (citation and internal quotations marks omitted)).

This lawsuit arises from plaintiff and defendant Slater's Sedgwick County, Kansas child support case. Doc. 1 at 6. Plaintiff's factual allegations are hard to follow. But, generally, plaintiff claims that Sedgwick County judges and "government partners" have "obstruct[ed] recusal and appeal in an interstate child support case for the purpose of preventing [p]laintiff and his attorney's further racketeering complaints to federal agents."[2] *Id.* at 2. Plaintiff and his attorney are now "faced with threats of physical force by state actor Judge Seth Rundle based upon *prima facie* insufficient contempt pleadings and proceedings." *Id.* Plaintiff claims that "continuing acts of retaliatory obstruction against [p]laintiff and his attorney that have occurred during an active federal investigation plausibly show that Sedgwick County is incapable of preventing its property, personnel, services[,] and revenue from being used to further [an] illegal enterprise even in a court system." *Id.*

Plaintiff is an "African-American and Native-American" male. *Id.* He and Ms. Slater were married from 1997 to 2013. *Id.* at 6 (Compl. ¶ 10). They have three children together. *Id.*

---

[2]       Plaintiff's attorney, Shayla Johnston, represented him in the Sedgwick County child support case, his state appeal, this litigation, and "all pending administrative and criminal complaints asserted by [p]laintiff." Doc. 1 at 13 (Compl. ¶ 57).

Judge Rundle has presided over their child support proceedings in Sedgwick County Case No. 13DM4220. *Id.* (Compl. ¶ 16). In July 2017, Ms. Slater filed to increase plaintiff's child support obligation. *Id.* (Compl. ¶ 13). During discovery, plaintiff learned that Ms. Slater had been reporting her income inaccurately since child support began in 2013. *Id.* (Compl. ¶ 17). Plaintiff filed a "Notice of Intent to Request Sanctions" for this conduct, but the Sedgwick County court struck plaintiff's notice without notice to plaintiff. *Id.* at 6–7 (Compl. ¶¶ 18, 19).

At the child support proceeding, Judge Rundle asked Ms. Slater's attorney whether she was arguing plaintiff's attorney had contacted a represented party. *Id.* at 7 (Compl. ¶ 20). Ms. Slater's attorney said no. *Id.* But after the proceeding, Judge Rundle ordered plaintiff's attorney to self-report "insinuated *ex parte* communications" to the Kansas Disciplinary Administrator. *Id.* (Compl. ¶ 21). Also, Judge Rundle "approved an unspecified assessment of fees against [plaintiff] and/or his attorney without specific findings of bad faith nor waste or delay." *Id.* (Compl. ¶ 22).

In March 2018, plaintiff filed a request to disqualify Judge Rundle after a "formal ethics investigation resulting from Rundle's Order." *Id.* (Compl. ¶ 24). Judge Rundle then denied voluntary disqualification from the case. *Id.* (Compl. ¶ 26). Plaintiff's attorney filed an affidavit asserting Judge Rundle's judicial bias. *Id.* at 8 (Compl. ¶¶ 27, 28). The affidavit stated, in part, that plaintiff's attorney had made "formal inquiry into racketeering" in Sedgwick County courts, and that 64 days later, her three-year-old relative/client was murdered after "his mother was granted a clearly fraudulent protection from stalking order."[3] *Id.* (Compl. ¶ 28). Chief Judge

---

[3] Plaintiff accuses Judge Fleetwood of "administrative obstruction of law enforcement efforts" to rescue the child (E.B.). Doc. 1 at 9 (Compl. ¶ 33). It does not appear that plaintiff and E.B. are in any way related, except that plaintiff's attorney seems to assert the Sedgwick County judges were biased against her, both in this case and in the E.B. case, because of her racketeering complaints.

Fleetwood held a hearing on plaintiff's attorney's recusal affidavit, "but his understanding of his statutory, administrative duties as to recusal could not be legally corroborated." *Id.* at 9 (Compl. ¶ 30). Judge Fleetwood denied plaintiff's request for reassignment. *Id.* (Compl. ¶ 32).

Judge Rundle then ordered child support income withholding (including a 3.5 percent Sedgwick County Trustee fee) against plaintiff. *Id.* at 10 (Compl. ¶ 35). And plaintiff lost every post-trial motion. *Id.* Plaintiff appealed, and Ms. Slater "filed a facially-invalid Motion for Contempt" to enforce a $4,400.00 attorney's fees award against plaintiff. *Id.* at 11 (Compl. ¶ 41). Judge Rundle set a hearing on the matter for October 1, 2018.[4] *Id.* (Compl. ¶ 43).

Then, on October 1, plaintiff's attorney had a docket conflict with plaintiff's hearing in front of Judge Rundle and another matter in front of Judge Dewey. *Id.* (Compl. ¶¶ 44–45). Plaintiff's attorney told opposing counsel and court personnel where she would be so that they could find her for plaintiff's case, if needed. *Id.* at 12 (Compl. ¶ 45). But nobody requested that plaintiff's attorney appear in either Judge Dewey or Judge Rundle's courtroom that day. *Id.* (Compl. ¶ 46). Plaintiff's attorney then received an "order for her disqualification and insinuation of citation for indirect contempt for failing to appear at 2:15 PM that day on Mrs. Slater's facially-invalid contempt motion." *Id.* (Compl. ¶ 47). Ms. Slater then tried to disqualify plaintiff's attorney from appellate representation, but the court denied her motion. *Id.* (Compl. ¶ 50).

On October 12, 2018, plaintiff's attorney contacted an HHS Office of the Inspector General Special Agent and "relayed complaints of racketeering involving an enterprise with

---

[4] The Complaint references another matter plaintiff's attorney had in front of Judge Rundle on August 14, 2018, where Judge Rundle "indicated his intent to find [p]laintiff's attorney in direct contempt for appearing by telephone on an interstate telephone hearing with a Colorado judge." Doc. 1 at 10 (Compl. ¶ 38). The case was reassigned to another judge before the next hearing. *Id.* The Complaint asserts, without explanation, that this matter did not involve an African-American litigant. *Id.* (Compl. ¶ 39).

courts in Sedgwick, Johnson[,] and Wyandotte [C]ounties in Kansas." *Id.* (Compl. ¶ 51). The same day, Judge Rundle "obstructed [p]laintiff's attorney's right to file Notice of Appeal of his decisions to disqualify the attorney, find her in contempt and to further pursue the judge's disqualification and venue transfer." *Id.* (Compl. ¶ 52). On October 29, 2018, plaintiff's attorney learned that Judge Fleetwood had reported to the Sheriff's Office that plaintiff's attorney had threatened him. *Id.* (Compl. ¶ 53). Plaintiff's attorney complained about Judge Fleetwood's conduct to Sedgwick County Attorney Eric Yost the same day. *Id.* at 13 (Compl. ¶ 54).

Plaintiff alleges the following against all defendants: a general claim under 42 U.S.C. §§ 1983 and 1988 (Count I); a § 1983 First Amendment claim (Count II); a § 1983 Equal Protection claim (Count III); and a Racketeer Influenced and Corrupt Organization Act ("RICO") claim under 18 U.S.C. § 1962 (Count IV). Plaintiff also brings an "abuse of process" claim against Ms. Slater (Count V).[5]

And plaintiff asks the court for the following relief: (1) disqualification of Sedgwick County Judges Fleetwood, Dewey, and Rundle from plaintiff's child support case; (2) transfer of venue from Sedgwick County to Cowley County; (3) a "stay" of Judge Rundle's orders, including his order disqualifying plaintiff's attorney; (4) an injunction preventing further filings in the child support case; (5) "[f]ederal reorganization, appointment of trustee and removal of officers" in the Sedgwick County Trustee's Office; (6) plaintiff's costs and treble attorney's fees; and (7) "[s]uch other relief as this [c]ourt may deem just and proper, including but not limited to prospective and/or retroactive injunctive relief for any injustice for which relief in the law is inadequate, declaratory relief, compensatory damages, punitive damages, pain and

---

[5] Plaintiff incorrectly labels this claim as "Count IV." Doc. 1 at 28. Because the Complaint already asserts the RICO claim as Count IV, the court refers to the abuse of process claim as Count V.

suffering, statutory damages (including treble damages and/or fines), reimbursement of funds paid or lost, class action certification, attorneys fees and/or costs."  Doc. 1 at 29.

## II.     Legal Standards

### A.  Rule 12(b)(1) standard

"Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted).  Federal district courts have original jurisdiction of all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship.  28 U.S.C. § 1331; 28 U.S.C. § 1332.  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted).  Since federal courts are courts of limited jurisdiction, there is a presumption against jurisdiction, and the party invoking jurisdiction bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Generally, a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) takes one of two forms:  a facial attack or a factual attack. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  "First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)) (internal citations omitted).

"Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id.* at 1003 (citations omitted).  "When

reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* (citations omitted).

### B. Rule 12(b)(6) standard

On a motion to dismiss for failure to state a claim, the court accepts all facts pleaded by the non-moving party as true and draws any reasonable inferences in favor of the non-moving party. *Brokers' Choice of Am. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court has explained, simply "will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). This is so because the court need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 557 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal quotation omitted)).

The court also will grant a motion to dismiss if an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). And "if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." *Id.* at 327 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73

(1984)).

## III. Discussion

All defendants ask the court to dismiss plaintiff's Complaint. They provide several reasons supporting their dismissal request. The court addresses each reason, in turn, below.

### A. Plaintiff's Requests for Declaratory Relief

The Sedgwick County, Kansas defendants argue that plaintiff's requests for "declaratory relief" fail as a matter of law.[6] Plaintiff labels some of his requests for relief as seeking "declaratory" relief. *See*, *e.g.*, Doc. 1 at 3 ("Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202."); *id.* at 17 (requesting "declaratory relief" against Judge Fleetwood "to reassign [p]laintiff's case"); *id.* at 21 (requesting "declaratory relief" against Judge Rundle "to voluntarily disqualify himself from [p]laintiff's case, vacate his orders of October 2, 2018 and thereafter and to provide proof of his training as to liability for coercive use of pleadings and orders, employee responsibilities to as to liability for coercive use of pleadings and orders, employee responsibilities to report the appearance of such conduct and the parameters of qualified, quasi-judicial and absolute immunity").

But all of plaintiff's demands are requests for injunctive relief. A declaratory judgment "declare[s] the rights and other legal relations of any interested party seeking such declaration . . . ." 28 U.S.C. § 2201. *See also United States v. Fisher-Otis Co., Inc.*, 496 F.2d 1146, 1151 (10th Cir. 1974) (citation omitted) ("The purpose of the Declaratory Judgment Act is to settle actual controversies before they ripen into violations of law or a breach of duty."). Here, none of plaintiff's requests for relief seek a declaration of rights. Instead, each request for "declaratory

---

[6]     Plaintiff's response to the Sedgwick County, Kansas defendants' Motion to Dismiss never responds to the argument that plaintiff hasn't stated a claim for declaratory relief. *See generally* Doc. 33 (Pl.'s Resp. to Defs.' Mots.).

relief" asks the court to order defendants to initiate some kind of action—for the most part, actions in plaintiff's underlying child support proceedings.

Even if plaintiff truly was seeking declaratory relief, state officials are immune from suit in their official capacities for retrospective declaratory relief because the Eleventh Amendment bars such claims. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004).

Also, "the Supreme Court has held [the Declaratory Judgment Act] confers upon courts the power, but not the duty, to hear claims for declaratory judgment." *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 980 (10th Cir. 2012) (first citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995); then citing *Pub. Affairs Assoc., Inc. v. Rickover*, 369 U.S. 111, 112 (1962)). When determining whether a court should exercise jurisdiction over a declaratory judgment action, the court should consider the following factors:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Id.* at 980–81 (quoting *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

Here, the "declaratory" relief that plaintiff seeks asks this court to order defendants to perform various actions—including actions in plaintiff's child support proceedings. Even if plaintiff was seeking declaratory relief—and not injunctive relief—the *Mhoon* factors strongly favor the court exercising its discretion to decline to hear plaintiff's claims under the Declaratory Judgment Act. An order of declaratory relief here: (1) will not settle plaintiff's underlying child support proceedings, (2) would not serve a useful purpose in clarifying the legal relations at

issue, (3) would promote procedural fencing because plaintiff seeks the relief as a way to avoid the jurisdiction of the Sedgwick County District Court, and (4) would increase friction between federal and state courts. Also, plaintiff has (5) an alternative remedy in state court because he can raise his arguments in that forum and also appeal any adverse Sedgwick County District Court orders to the Kansas appellate courts. For these reasons—and to the extent plaintiff raises any plausible claims for declaratory relief—the court declines to exercise jurisdiction over them.

## B. *Younger* Abstention

All defendants assert that the *Younger* abstention doctrine bars plaintiff's claims. "*Younger* abstention dictates that federal courts not interfere with state court proceedings by granting equitable relief—such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings—when such relief could adequately be sought before the state court." *Amanatullah v. Colo. Bd. of Med. Exam'rs*, 187 F.3d 1160, 1163 (10th Cir. 1999) (citation and internal quotation marks omitted). *Younger* abstention applies when:

> "(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies."

*Chapman v. Oklahoma*, 472 F.3d 747, 749 (10th Cir. 2006) (quoting *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003)). If those three conditions exist, "'*Younger* abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain.'" *Id.* (quoting *Crown Point I, LLC*, 319 F.3d at 1215). All three *Younger* conditions are satisfied here.

*First*, there is an ongoing state proceeding.  Plaintiff and Ms. Slater's child support case is ongoing until their children reach the age of majority.[7]  *See In re Marriage of Schoby*, 4 P.3d 604, 607 (Kan. 2000) (explaining that child support "may be modified at any time circumstances render such a change proper . . . ." (citation and internal quotation marks omitted)); *see also J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1291 (10th Cir. 1999) (holding that continuing state court jurisdiction to modify child custody constitutes an ongoing state proceeding).

*Second*, Kansas state court provides an adequate forum to hear the claims plaintiff presents in this lawsuit.  When considering the second *Younger* requirement, "the 'pertinent issue is whether [the federal] claims could have been raised in the pending state proceedings.'" *Valdez*, 186 F.3d at 1292 (quoting *Moore v. Sims*, 442 U.S. 415, 425 (1979)).  "'Certainly, abstention is appropriate unless state law clearly bars the interposition of the [federal statutory] and constitutional claims.'"  *Id.* (quoting *Moore*, 442 U.S. at 425–26).  Plaintiff bears the burden to prove that state law bars him presenting his claims in the state court proceeding.  *Id.* (first citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14–15 (1987); then citing *Moore*, 442 U.S. at 432).

District courts in Kansas are courts of general jurisdiction.  *See* Kan. Stat. Ann. § 20-301.[8]  And state courts of general jurisdiction "can adjudicate cases invoking federal statutes, such as § 1983," the very claims that plaintiff asserts in this federal case.  *Nevada v. Hicks*, 533 U.S. 353, 366 (2001).  Plaintiff makes a conclusory assertion that his lawsuit involves "claims of

---

[7]    Kan. Stat. Ann. § 38-2279(g) provides that "the court in the registration case shall have continuing jurisdiction over the child support action and . . . may modify any prior support order if a material change in circumstances is shown . . . ."

[8]    The Kansas Juvenile Justice Code provides the law governing child support cases.  *See* Kan. Stat. Ann. §§ 38-2319–2323.  It also provides an appeal process for district judges' rulings to the state court of appeals.  Kan. Stat. Ann. § 38-2382

collusive bad faith, harassment, or [some] other unusual circumstance that would call for equitable relief involving interstate commerce between interstate actors—claims for which there is inadequate remedy in state court or on appeal." Doc. 33 at 8. But he alleges no facts to support this conclusory allegation. Plaintiff hasn't shouldered his burden to show that the Kansas state courts are not an adequate forum for addressing the claims plaintiff asserts in this lawsuit.

*Finally*, child support proceedings involve an important state interest. "It is well-established that federal courts lack jurisdiction over 'the whole subject of the domestic relations of husband and wife [and] parent and child.'" *Hunt v. Lamb*, 427 F.3d 725, 727 (10th Cir. 2005) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (quotations omitted)). Thus, all three *Younger* conditions exist here.

In plaintiff's Response to defendants' motions to dismiss, he asserts that an exception to *Younger* exists here and it allows the court to exercise jurisdiction over his claims. Doc. 33 at 9. Indeed, the court may decline to apply the *Younger* abstention doctrine in extraordinary cases such as "'proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown . . . .'" *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) (quoting *Perez v. Ledesma*, 401 U.S. 82, 85 (1971)). But, again, plaintiff just makes conclusory assertions of bad faith and harassment. And he alleges no facts that could bear the "heavy burden" required "to overcome the bar of *Younger* abstention . . . ." *Id.* (citation and internal quotation marks omitted); *see also Schwab v. Kansas*, 691 F. App'x 511, 515 (10th Cir. 2017) (affirming district court's decision to apply *Younger* and deny plaintiffs' Motion for Preliminary

Injunction because plaintiffs provided no evidence of bad faith or harassment to meet their burden to show that an exception to *Younger* applied).

In sum, plaintiff asks the court to enjoin a pending state court proceeding where there is an adequate state forum and an important state interest involved. Thus, *Younger* abstention applies. And the court cannot grant plaintiff the equitable relief he seeks. *See Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999) (holding that the *Younger* doctrine did not apply when plaintiff did not seek any equitable relief); *see also Morkel v. Davis*, 513 F. App'x 724, 729 (10th Cir. 2013) (explaining that plaintiff's claims for monetary damages did "not fall within the purview of Younger abstention"). So, the court abstains from exercising jurisdiction over plaintiff's claims for equitable relief under *Younger*, and it dismisses these claims without prejudice. *See Morkel*, 513 F. App'x at 730 (affirming the district court's dismissal of equitable claims under *Younger* but remanding with instructions to modify the dismissal without prejudice); *see also Smith v. Lake*, No. CIV-16-055-RAW, 2016 WL 4690396, at *3 (E.D. Okla. Sept. 7, 2016) (dismissing plaintiff's § 1983 claims seeking equitable relief without prejudice under *Younger* and dismissing plaintiff's § 1983 claims for monetary relief on the merits).

## C. *Rooker-Feldman* Doctrine

Next, the court addresses defendants' argument that the *Rooker-Feldman* doctrine bars plaintiff's claims. Indeed, to the extent plaintiff asks the federal court to vacate any final state court judgments, *Rooker-Feldman* bars the court from doing so. "The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The doctrine applies "where a party in effect

seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Id.* at 466. To allow otherwise would contravene 28 U.S.C. § 1257, which confers jurisdiction only on the Supreme Court to hear appeals from final state-court judgments. *Id.* at 463. The *Rooker-Feldman* doctrine thus precludes the lower federal courts "from exercising appellate jurisdiction over final state-court judgments." *Id.*

Here, plaintiff complains about state court rulings, and essentially he asks the federal court to overturn certain state court decisions in his child support proceedings. *See*, *e.g.*, Doc. 1 at 3 (asserting that plaintiff seeks "federal relief . . . to stay orders issued by Judge Seth Rundle, force recusal and transfer of the domestic case, for federal reorganization, appointment of trustee and/or removal of officials at 525 N. Main in Wichita, Kansas, and for other damages as otherwise specified and appropriate"); *see also id.* at 21 (requesting "declaratory relief against [Judge] Rundle to voluntarily disqualify himself from Plaintiff's case, *vacate his orders of October 2, 2018* and thereafter and to provide proof of his training . . . ." (emphasis added)). Under *Rooker-Feldman*, a federal court is not an avenue for plaintiff to appeal adverse state court rulings. The court thus dismisses plaintiff's claims challenging final orders in his state child support proceedings without prejudice. *See Atkinson-Bird v. Utah Div. of Child and Family Servs.*, 92 F. App'x 645, 648 (10th Cir. 2004) (holding that a federal court lacks jurisdiction when the *Rooker-Feldman* doctrine applies and "has no power but to dismiss the case without prejudice" (citing *T.W. ex rel. Enk v. Brophy*, 124 F.3d 893, 898–99 (7th Cir. 1997))).

### D. Domestic Relations Exception

All defendants argue that the domestic relations exception bars plaintiff's claims. The Supreme Court has held that the "domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S.

689, 703 (1992). The Tenth Circuit has interpreted this rule as one prohibiting federal courts from "decid[ing] those issues regularly decided in state court domestic relations actions such as divorce, alimony, child custody, or the support obligations of a spouse or parent" because those issues are governed by the domestic relations exception. *Vaughan v. Smithson*, 883 F.2d 63, 65 (10th Cir. 1989). The domestic relations exception "is generally considered an exception to diversity jurisdiction," but courts also have applied the rule in federal question cases, like this one. *See Watson v. Missouri*, No. 15-9930-JAR-JPO, 2016 WL 1359868, at *4 (D. Kan. Apr. 6, 2016) (citing *Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1111 & n.4 (10th Cir. 2000) (further citations omitted)).

Here, plaintiff asks the court to issue injunctive relief that disqualifies the judges in his state court child support proceeding, transfers venue to another court, requires at least one judge to vacate certain orders in the proceeding, imposes a stay in the case, and prevents further filings in the child support proceeding. These requests, in effect, ask the court to decide issues that are ones regularly decided in "state court domestic relations actions such as" cases involving "the support obligations of a spouse or parent." *Vaughan*, 883 F.2d at 65. Thus, the domestic relations exception provides another reason why the relief sought here is beyond this court's jurisdiction. *See, e.g.*, *Watson*, 2016 WL 1359868, at *4 ("Because Plaintiff's requested relief would require this Court to modify or declare void a child support and health insurance decision concerning Plaintiff's minor children—domestic relations matters that traditionally look to state law for their resolution—these claims are outside this Court's jurisdiction.").

### E. Eleventh Amendment Immunity

Plaintiff sues all the Sedgwick County, Kansas defendants in their official capacities. The Sedgwick County, Kansas defendants argue that the Eleventh Amendment bars plaintiff's

official capacity claims against them seeking money damages. Doc. 15 at 10 n.4. The court

agrees. *See*, *e.g.*, *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998) ("[T]he

Eleventh Amendment bars federal court jurisdiction over . . . a state official acting in her official

capacity in a suit for damages . . . ."); *Gradle v. Oklahoma*, 203 F. App'x 179, 183 (10th Cir.

2006) (affirming district court's dismissal of plaintiff's § 1983 claims for money damages

against a state court judge and prosecutor in their official capacities because Eleventh

Amendment immunity barred the claims); *Schroeder v. Kochanowski*, 311 F. Supp. 2d 1241,

1256 (D. Kan. 2004) ("The official capacity claims against Judge Hebert are barred by the

Eleventh Amendment. As a District Judge in Saline County, Judge Hebert is a State official,

whose office was created by the Kansas Constitution Article 3 § 6.52."). The court thus

dismisses plaintiff's official capacity claims seeking money damages against the Sedgwick

County, Kansas defendants as barred under the Eleventh Amendment.

### F. Judicial Immunity

The Sedgwick County, Kansas defendants next argue that judicial immunity bars

plaintiff's individual capacity claims against them. *See Crowe & Dunlevy, P.C. v. Stidham*, 640

F.3d 1140, 1156 (10th Cir. 2011) (explaining that judicial immunity applies only to individual

capacity claims). Plaintiff sues just Judges Fleetwood and Rundle in their individual capacities.

"Judicial officers are explicitly immunized not only against damages but also against

suits for injunctive relief under 42 U.S.C. § 1983." *Ysais v. New Mexico*, 373 F. App'x 863, 866

(10th Cir. 2010) (citing *Roth v. King*, 449 F.3d 1272, 1286–87 (D.C. Cir. 2006)). The only

exception exists when acts are "committed in the clear absence of all jurisdiction." *Henriksen v.*

*Bentley*, 644 F.2d 852, 855 (10th Cir. 1981) (citing *Stump v. Sparkman*, 435 U.S. 349, 356

(1978)). A judge does not act without any jurisdiction even if "the action he took was in error,

was done maliciously, or was in excess of his authority." *Stump*, 435 U.S. at 356–57. Moreover, "[a] judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors." *Id.* at 359. The Supreme Court has articulated two factors courts should consider when determining whether an act constitutes a "judicial act:" "whether it is a function normally performed by a judge," and "whether [the parties] dealt with the judge in his judicial capacity." *Id.* at 362.

Both factors mandate the conclusion that Judges Fleetwood and Rundle were performing judicial acts when they engaged in the conduct allegedly violating plaintiff's rights. Plaintiff complains Sedgwick County judges "obstructed legal remedy," denied plaintiff's request for judicial reassignment, threatened plaintiff's attorney with contempt, denied plaintiff hearings and continuances, interfered with plaintiff's choice of attorney, and refused recusal. Doc. 1 at 16, 20. But rulings about recusal, contempt, hearings, continuances, and attorney disqualification are all actions within a judge's judicial capacity. *See*, *e.g.*, Kan. Stat. Ann. § 20-311d (providing procedure for a motion for change of judge in Kansas district courts); *In re Marriage of Shelhamer*, 323 P.3d 184, 187 (Kan. 2014) (Kansas district courts exercise contempt power); *Barragree v. Tri-County Elec. Co-op., Inc.*, 950 P.2d 1351, 1357 (Kan. 1997) (generally discussing standards district court should apply to attorney disqualification); *State v. Huntley*, 177 P.3d, 1001, 1007 (Kan. Ct. App. 2008) (Kansas district court has discretion to grant continuances). Plaintiff's allegations here stem from the judges' decisions in his child support case (Doc. 1 at 1), so plaintiff was dealing with the judges in their respective judicial capacities. Plaintiff thus fails to allege that Judges Fleetwood and Rundle acted in the complete absence of all jurisdiction. Also, plaintiff's disagreement with judicial actions "does not justify depriving

that judge of his immunity." *Stump v. Sparkman*, 435 U.S. 349, 363 (1978). Judicial immunity thus immunizes the individual capacity claims against Judges Fleetwood and Rundle.

Also—to the extent plaintiff asserts individual capacity claims against the other Sedgwick County, Kansas defendants (Judge Dewey, Court Trustee Wheeler, and Court Clerk Lumbreras)—judicial immunity extends to them as well. Plaintiff alleges that Judge Dewey "obstructed legal remedy" and ignored plaintiff's requests for continuance and judicial reassignment. Doc. 1 at 18. For the same reasons discussed above, Judge Dewey is alleged to have taken these actions in his judicial capacity. Thus, he enjoys absolute judicial immunity.

Court Trustee Wheeler and Court Clerk Lumbreras also can invoke judicial immunity against any individual capacity claims asserted against them. "Immunity which derives from judicial immunity may extend to persons other than a judge where performance of judicial acts or activity as an official aid of the judge is involved." *Henriksen v. Bentley*, 644 F.2d 852, 855 (10th Cir. 1981). "[A]bsolute judicial immunity has been extended to non-judicial officers where 'their duties had an integral relationship with the judicial process.'" *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000) (quoting *Eades v. Sterlinske*, 810 F.2d 723, 726 (7th Cir. 1987)); *see also Lundahl v. Zimmer*, 296 F.3d 936, 939 (10th Cir. 2002) (holding that a clerk had judicial immunity for entering a default judgment); *Smith v. Rosenbaum*, 460 F.2d 1019, 1020 (3d Cir. 1972) (holding that a clerk setting bail enjoyed judicial immunity). And, even if a clerk disregards a court's order or instructions, immunity still applies as long as the act has an integral relationship with the judicial process. *Coleman v. Farnsworth*, 90 F. App'x 313, 317 (10th Cir. 2004) ("[T]he defense of judicial immunity should generally apply, regardless of procedural error, motive or good faith.").

Here, plaintiff complains that defendant Court Clerk Lumbreras obstructed plaintiff's filing privileges in post-trial matters and failed to prevent misuse of court filing systems. Doc. 1 at 24. But filing is an integral part of the judicial process. And so, even if defendant Lumbreras improperly obstructed plaintiff's efforts to file court papers, defendant Lumbreras enjoys judicial immunity. *Coleman*, 90 F. App'x at 317. Plaintiff complains that defendant Court Trustee Wheeler collected a "Trustee's fees of up to 3.5 percent of child support orders without investigation as to whether the ordered support was obtained through honest litigation rather than as the result of retaliatory whistleblower obstruction . . . ." Doc. 1 at 22. But the Court Trustee's fee is a statutorily authorized part of judicial child support collection.[9] Thus, it is an integral part of the judicial process. And, Court Trustee Wheeler enjoys judicial immunity against plaintiff's claims.

For all the reasons above, the Sedgwick County, Kansas defendants enjoy judicial immunity. And they are immune from suit under 42 U.S.C. § 1983, as well as RICO. *See*, *e.g.*, *Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007) (affirming dismissal of plaintiff's RICO claims against judicial officers because they had absolute judicial immunity); *see also Raiser v. Kono*, 245 F. App'x 732, 735–36 (10th Cir. 2007) (dismissing § 1983 and RICO claims against a state court judge based on judicial immunity). The court thus dismisses plaintiff's individual capacity claims against the Sedgwick County, Kansas defendants.

### G. Defendants Sedgwick County BOCC and Sheriff Easter's Failure to State a Claim Arguments

Defendants Sedgwick County BOCC and Sheriff Easter argue that plaintiff has failed to state plausible § 1983 and RICO claims (Counts I–IV) against them. Thus, they ask the court to

---

[9]    Kan. Stat. Ann. § 20-380 authorizes the court trustee's office to charge an amount not to exceed five percent of the support collected from child support obligors.

dismiss plaintiff's claims against them under Fed. R. Civ. P. 12(b)(6). For reasons explained below, the court agrees.

1. **Plaintiff fails to state any plausible § 1983 claims against Sedgwick County BOCC and Sheriff Easter.**

Section 1983 imposes civil liability on one "who, under color of any statute, ordinance, regulation, custom, usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws'" of the United States. *Baker v. McCollan*, 443 U.S. 137, 140 (1979). Section 1983 "does not provide any substantive rights at all." *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979). To impose liability on a defendant, "it is necessary to isolate the precise constitutional violation with which he is charged." *Baker*, 443 U.S. at 140.

Count I references "abuses of power" (Doc. 1 at 14) but never alleges a "precise constitutional violation." *See Baker*, 443 U.S. at 140. Plaintiff just alleges that Sedgwick County BOCC "knowingly permits its buildings, facilities, infrastructure, personnel, and revenue to be used for the impermissible generation of income for government entities and associated private persons." Doc. 1 at 14. And then, in conclusory fashion, he alleges that with these actions, the Sedgwick County BOCC has "deprive[d] Plaintiff of legal rights, privileges and immunities . . . ." *Id.* Under Kansas law, the Sedgwick County BOCC must provide a

courthouse for the state district court. Kan. Stat. Ann. § 19-104. But Sedgwick County BOCC has no supervisory authority over the district court. *Cf.* Kan. Stat. Ann. § 19-101 (listing the powers of a county but not including the power to oversee district courts). Plaintiff's conclusory allegations against the Sedgwick County BOCC fail to identify who acted under color of state law, and the precise constitutional violation plaintiff allegedly sustained. The court thus dismisses Count I (42 U.S.C. § 1983 Violation) against the Sedgwick County BOCC.

Next, plaintiff alleges that Sheriff Easter "violated . . . clearly established [c]onstitutional rights, as a reasonable person would have responded, rather than ignored, [p]laintiff's September 14, 2018, complaint."[10] Doc. 1 at 25. The Complaint asserts that plaintiff authorized his counsel "to make complaints to the Office of Judicial Qualifications, Sedgwick County, the City of Wichita Police Department and [f]ederal agencies." *Id.* at 11. But the Complaint provides no other information about these complaints. The Complaint does not allege any specific action (or inaction) on the part of Sheriff Easter—other than general, conclusory allegations that he violated plaintiff's legal rights by failing to investigate a complaint. The Complaint never alleges the specific constitutional or statutory violation that injured plaintiff's rights—except for vague and conclusory allegations that Sheriff Easter has "deprived [p]laintiff of legal rights, privileges or immunities by knowingly permitting law enforcement services and personnel of the Sedgwick County Sheriff's Office to acquiesc[e] in collusive deprivation of [p]laintiff's substantive due process rights . . . ." Doc. 1 at 25. Plaintiff's mere conclusory allegations fail to state a plausible claim for relief. The court thus dismisses Count I (42 U.S.C. § 1983 Violation) against Sheriff Easter.

---

[10]     Defendant Easter's Motion to Dismiss references a "telephone complaint relayed by [plaintiff's] [a]ttorney Shayla Johnston to Sheriff Easter's voicemail." Doc. 19 at 3. The Complaint does not specify whether Sheriff Easter failed to respond to this complaint. But in any event, plaintiff fails to state a plausible claim.

Count II (First Amendment retaliation) and Count III (Equal Protection violation) against the Sedgwick County BOCC and Sheriff Easter fail for similar reasons. Count II generally alleges plaintiff has been "obstructed from legal redress and remedy for grievance [sic] against a racially-biased and/or retaliatory judge." Doc. 1 at 27. Count III alleges "retaliatory obstruction in the form of contempt findings and implied threat of physical force for the fundamental exercise of fundamental First Amendment rights . . . ." *Id.* But plaintiff alleges no facts about how the Sedgwick County BOCC or Sheriff Easter violated plaintiff's First Amendment or Equal Protection rights. The court thus dismisses plaintiff's § 1983 claims in Count II (First Amendment) and Count III (Equal Protection) against defendants Sedgwick County BOCC and Sheriff Easter.[11]

---

[11]    Defendants Sedgwick County BOCC and Sheriff Easter briefly assert a qualified immunity defense in their Motion to Dismiss. Doc. 19 at 4. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To establish a § 1983 claim against an individual defendant asserting the defense of qualified immunity, plaintiff must allege facts that "make out a violation of a constitutional right," and demonstrate that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). A "plaintiff cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it." *Herring v. Keenan*, 218 F.3d 1171, 1176 (10th Cir. 2000) (citation and internal quotation marks omitted). Instead, the court must determine "'whether the violative nature of particular conduct is clearly established.'" *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). Plaintiff's Response doesn't identify whether he has alleged that the Sedgwick County BOCC and Sheriff Easter have violated a clearly established constitutional right. *See* Doc. 33 at 13 (arguing that the "State defendants" violated plaintiff's constitutional rights by "deny[ing] him counsel, subject[ing] him to invalid contempt procedures to extract attorney's fees, . . . block[ing] his filing privileges, obstruct[ing] his appeals and deny[ing] him hearings."). Plaintiff never explains how the Sedgwick County BOCC and Sheriff Easter purportedly violated his clearly established constitutional rights to avoid a qualified immunity defense. The court also could dismiss plaintiff's § 1983 claims against the Sedgwick County BOCC and Sheriff Easter for this reason.

## 2. Plaintiff's 18 U.S.C. § 1962 (RICO) claim fails to state a claim against Sedgwick County BOCC and Sheriff Easter.

Count IV brings a claim under 18 U.S.C. § 1962 (RICO). Plaintiff vaguely alleges a "pattern of racketeering activity having a relationship with an enterprise which is involved in interstate commerce." Doc. 1 at 28. While plaintiff neglects to specify the precise theory his RICO claim means to assert, the court construes this allegation as a cause of action under 18 U.S.C. § 1962(c). It provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Plaintiff's conclusory allegations under this provision fail to state a claim.

"RICO is founded on the concept of racketeering activity." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2096 (2016). "To state a RICO claim, a plaintiff must set forth 'four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. A pattern of racketeering activity must include commission of at least two predicate acts.'" *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 838 (10th Cir. 2005) (quoting *Deck v. Engineered Laminates*, 349 F.3d 1253, 1257 (10th Cir. 2003)). Predicates are "any act 'indictable' under specified federal statutes . . . as well as certain crimes 'chargeable' under state law . . . ." *RJR Nabisco*, 196 S. Ct. at 2096. "A predicate offense implicates RICO when it is part of a 'pattern of racketeering activity'—a series of related predicates that together demonstrate the existence or threat of continued criminal activity." *Id*.

Plaintiff never alleges a specific crime (or other predicate act) to support a RICO claim. Instead, the Complaint just generally alleges "retaliatory obstruction" and "racketeering" in plaintiff's Sedgwick County child support case. Without at least two predicate acts, no plausible

RICO claim exists.  Also, plaintiff never identifies a pattern and makes only a passing reference to an "enterprise."  Doc. 1 at 28.  Thus, plaintiff's allegations fail to support a plausible RICO claim.  And, the court dismisses plaintiff's RICO claim (Count IV) against the Sedgwick County BOCC and Sheriff Easter.[12]

### H.  Failure to State a Claim Against Defendant Melinda Slater

Plaintiff also asserts § 1983, RICO, and an abuse of process claims against defendant Slater—plaintiff's ex-wife.  All of the actions attributed to Ms. Slater in plaintiff's Complaint are actions taken in the divorced couple's child support proceedings.  *See*, *e.g.*, Doc. 1 at 11 (accusing Ms. Slater of filing a facially-invalid Motion for Contempt to enforce an award of $4,400.00 in attorney's fees); *id.* at 12 (accusing Ms. Slater of moving to disqualify plaintiff's counsel from representing him in the Kansas Court of Appeals).  Ms. Slater moves to dismiss all claims under Fed. R. Civ. P. 12(b)(6) for failing to state a claim for relief.  Doc. 20 at 8.

### 1.  Section 1983 Claims (Counts I–III)

To support plaintiff's § 1983 claim, the Complaint makes conclusory allegations that defendant Slater "acted in collusion with state actors to deprive [p]laintiff of [c]onstitutionally-protected legal rights, privileges or immunities."  Doc. 1 at 26.  But plaintiff provides zero facts to support these allegations.  Also, plaintiff never alleges a "precise constitutional violation" that Ms. Slater purportedly committed.  *See Baker*, 443 U.S. at 140.  Without such factual allegations, plaintiff fails to state a § 1983 claim against Ms. Slater.  *See id.* at 146–47 (holding that plaintiff must allege that a defendant deprived him of a right "secured under the United States

---

[12]    The Sedgwick County, Kansas defendants also argue that plaintiff fails to state a plausible RICO claim against them.  The court already has determined that judicial immunity bars the claims against these defendants.  But, the court also agrees that plaintiff fails to state a plausible RICO claim against the Sedgwick County, Kansas defendants for the same reasons plaintiff fails to state a viable RICO claim against the Sedgwick County BOCC and Sheriff Easter.

Constitution;" otherwise plaintiff has "no claim cognizable under § 1983"); *see also Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000) ("To state a cause of action under 42 U.S.C. § 1983 . . . the challenged conduct must constitute state action. Where, as here, a § 1983 claim is based on the conduct of a private individual, that conduct constitutes state action if it is 'fairly attributable to the state.'" (citations and internal quotation marks omitted)). The Complaint alleges no facts that, if proved as true, could support a "fairly attributable to the state" finding. The court thus dismisses plaintiff's § 1983 claims (Counts I–III) asserted against Ms. Slater.

## 2. RICO Claim (Count IV)

Plaintiff's RICO claim (Count IV) fails to state a claim against Ms. Slater for the same reasons it fails to state a claim against defendant Sedgwick County BOCC and Sheriff Easter, as discussed *supra* in Part III.G.2. Plaintiff makes conclusory allegations about "retaliatory obstruction" and "racketeering" in plaintiff's Sedgwick County child support case. But he never alleges a specific crime (or predicate act) to support a RICO claim. Also, he never identifies a pattern and makes only a passing reference to an "enterprise." Doc. 1 at 28. This kind of sound-bite pleading can't withstand a motion to dismiss under Rule 12(b)(6). Plaintiff fails to state a plausible RICO claim against Ms. Slater, and the court thus dismisses that claim.

## 3. Abuse of Process (Count V)

Finally, plaintiff brings an "abuse of process" claim against Ms. Slater. Doc. 1 at 28. Plaintiff alleges that defendant Slater has "engaged in a pattern of initiating, encouraging and enforcing illegal, improper and/or unauthorized legal proceedings to obstruct [p]laintiff's substantive due process rights and deprive him and their mutual children of their civil liberties." *Id.* To state a claim for abuse of process under Kansas law, a plaintiff must allege "knowingly illegal or improper use of the process done for the purpose of harassing or causing hardship,

which resulted in damage to the state court plaintiff." *McShares Inc. v. Barry*, 970 P.2d 1005, 1015 (Kan. 1998) (citation omitted); *see also Davis v. Neb. Furniture Mart, Inc.*, No. 11-2559-JAR, 2012 WL 1252633, at *4 (D. Kan. Apr. 13, 2012) ("An abuse of process is based on the use of the judicial system for some process other than its intended purpose."). "'For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended. The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it.'" *Davis*, 2012 WL 1252633, at *4–5 (quoting Restatement (Second) of Torts § 682 cmt. b (1977)).

Here, plaintiff just makes conclusory allegations of abuse of process. And, the court questions whether these conclusory assertions suffice to nudge plaintiff's abuse of process claim over the line to assert a plausible claim. But the court need to not decide that issue. Instead, exercising its discretion, the court declines to exercise supplemental jurisdiction over the state law abuse of process claim because it is the only remaining claim in this lawsuit now that the court has dismissed all of plaintiff's federal claims. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction [when] the district court has dismissed all claims over which it has original jurisdiction."); *see also Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims." (emphasis added)).

The Supreme Court has directed district courts, when deciding whether to maintain jurisdiction over state law claims, to consider "the values of judicial economy, convenience, fairness, and comity . . . ." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Each of

these factors favor the court declining to assert supplemental jurisdiction over plaintiff's state law claim. *First*, dismissal of plaintiff's state law claim without prejudice will not waste judicial resources because the case is in its early stages. No pretrial proceedings or discovery have occurred yet. *Second*, this result is not unfair for plaintiff. The statute of limitations is tolled for plaintiff's state law claim while it is pending in federal court and for six months afterwards under federal law and the Kansas "saving statue."[13] *Third*, the Kansas state courts provide the same level of convenience and fairness as the federal courts. *Finally*, comity strongly favors remand. Kansas state courts have a strong interest in deciding matters involving purely state law claims— like plaintiff's abuse of process claim asserted here. *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) ("'[N]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.'") (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)). Because all the factors favor remand and no circumstance presents a compelling reason to the contrary, the court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claim for abuse of process.

## IV.    Conclusion

For the above reasons, the court grants defendants' motions to dismiss. When responding to defendants' motions, plaintiff several times asks for permission to file a surreply, or to amend his Complaint. *See*, *e.g.*, Doc. 1 at 2, 8 n.5, 14.

---

[13]       *See* 28 U.S.C. § 1367(d) (explaining that the limitations period is tolled "while the claim is pending and for a period of 30 days after it is dismissed *unless State law provides for a longer tolling period*" (emphasis added); *see also* Kan. Stat. Ann. § 60-518 (providing a plaintiff six months to commence a new action if a previous timely action failed "otherwise than upon the merits"); *Rogers v. Williams, Larson, Voss, Strobel & Estes*, 777 P.2d 836, 839 (Kan. 1989) (explaining that a dismissal "otherwise than upon the merits" as used in the Kansas "saving statute" includes a dismissal without prejudice). So, nothing prevents plaintiff from refiling his state law claim in Kansas court, as long as he timely files the claim under the Kansas saving statute.

Our local rule, D. Kan. Rule 7.1(c), limits briefing on motions to the motion (with memorandum in support), a response, and a reply. Surreplies typically are not allowed. *Taylor v. Sebelius*, 350 F. Supp. 2d 888, 900 (D. Kan. 2004), *aff'd on other grounds*, 189 F. App'x 752 (10th Cir. 2006). Instead, surreplies are permitted only with leave of court and under "rare circumstances." *Humphries v. Williams Nat. Gas Co.*, No. 96-4196-SAC, 1998 WL 982903, at *1 (D. Kan. Sept. 23, 1998) (citations and internal quotation marks omitted). For example, when a moving party raises new material for the first time in a reply, the court should give the nonmoving party an opportunity to respond to that new material (which includes both new evidence and new legal arguments) in a surreply. *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005); *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003). Here, plaintiff's request to file a surreply—in his response to defendants' motion—is premature. When he made the request, defendants hadn't even filed their replies yet. Plaintiff's response gave him the opportunity to make his arguments opposing dismissal. And his briefing failed to shoulder that burden. *See* Doc. 33.

Also, plaintiff hasn't shown that the court should grant him leave to file an amended Complaint. Plaintiff hasn't sought leave to amend as our local rule, D. Kan. Rule 15.1 requires. *See* D. Kan. Rule 15.1(a) ("A party filing a motion to amend or a motion for leave to file a pleading or other document that may not be filed as a matter of right must: (1) set forth a concise statement of the amendment or leave sought; (2) attach the proposed pleading or other document; and (3) comply with the other requirements of D. Kan. Rules 7.1 through 7.6."). Also, plaintiff never explains how an amendment will cure the deficiencies with his current pleading (or even could cure it). Plaintiff is represented by counsel, and his counsel easily could discern this

court's requirements for seeking leave to file an amended complaint. The court's local rules state them precisely and concisely. Plaintiff hasn't shown that leave to amend is warranted here.

In sum, the court dismisses plaintiff's claims for the following reasons:

- To the extent plaintiff raises any plausible claims for declaratory relief, the court declines to exercise jurisdiction over them. Thus, the court dismisses any purported claims for declaratory relief without prejudice.

- The court dismisses plaintiff's claims for injunctive relief without prejudice because the *Younger* abstention doctrine, *Rooker-Feldman* doctrine, and the domestic relations exception preclude the court from exercising jurisdiction over plaintiff's claims for injunctive relief.

- The court dismisses plaintiff's claims for money damages for the following reasons:

  - Eleventh Amendment immunity bars plaintiff's official capacity claims against the Sedgwick County, Kansas defendants. So, the court dismisses plaintiff's official capacity claims against the Sedgwick County, Kansas defendants without prejudice.[14]

  - Judicial immunity bars plaintiff's individual capacity claims against the Sedgwick County, Kansas defendants. So, the court dismisses the individual capacity claims against the Sedgwick County, Kansas defendants with prejudice.[15]

---

[14]     *See Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017) (holding that "[b]ecause Eleventh Amendment immunity is jurisdictional," a dismissal based on that reason "should have been without prejudice").

[15]     *See Van Sickle v. Holloway*, 791 F.2d 1431, 1433–34 (10th Cir. 1986) (affirming district court's conclusion that "the defendants were judicially immune" and its "dismiss[al] of the action with

- Plaintiff fails to state plausible § 1983 and RICO claims against defendants Sedgwick County BOCC, Sheriff Jeff Easter, and Melinda Slater.  So, the court dismisses the § 1983 and RICO claims against defendants Sedgwick County BOCC, Sheriff Jeff Easter, and Melinda Slater with prejudice.

- And the court declines to exercise supplemental jurisdiction over plaintiff's claim against defendant Melinda Slater for abuse of process under Kansas law.  So, the court dismisses the Kansas abuse of process claim against defendant Melinda Slater without prejudice.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motions to Dismiss (Docs. 14, 19, 20) are granted.  This case is dismissed.

**IT IS SO ORDERED.**

**Dated this 30th day of September, 2019, at Kansas City, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**

---

prejudice"); *see also Smith v. Arguello*, 415 F. App'x 57, 61 (10th Cir. 2011) (affirming district court's dismissal of plaintiff's claims for several reasons including "the doctrines of judicial immunity" and concluding that "the district court properly entered the dismissal with prejudice").